IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JASON A. CAMBRON, #Y316765, ) | Civil Action No. 3:10-2334-RMG-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| LIEUTENANT RILEY, OF HILL-FINKLEA ) | |
| DET. CTR.; ) | **REPORT AND RECOMMENDATION** |
| SERGEANT SENNITT, OF HILL-FINKLEA ) | |
| DET. CTR.; ) | |
| SERGEANT SHEETS, OF HILL-FINKLEA ) | |
| DET. CTR.; AND ) | |
| CORPORAL DESANTO, HILL-FINKLEA ) | |
| DET. CTR., ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

Plaintiff filed this action on September 8, 2010.[1] At the time of the alleged incidents, he was a pretrial detainee at the Hill-Finklea Detention Center, also known as the Berkeley County Detention Center ("BCDC") in Moncks Corner, South Carolina. On May 2, 2011, Defendants filed a motion to dismiss or in the alternative for summary judgment. Because Plaintiff is proceeding pro se, he was advised on May 4, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in the dismissal of his complaint. Plaintiff filed a response on May 6, 2011, and Defendants filed a reply on June 8, 2011.

___

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

**DISCUSSION**

Plaintiff alleges that Defendants were negligent because they failed to timely provide him with medical care. He also appears to be asserting claims for medical deliberate indifference. Defendants contend that their motion to dismiss or in the alternative for summary judgment should be granted because: (1) this Court lacks jurisdiction as Plaintiff failed to exhaust his available administrative remedies; (2) Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs; and (3) Defendants are entitled to qualified immunity.[2]

1.  Medical Claims

Plaintiff alleges that he noticed a painful bump on his face over his right eye, that he thought was a pimple, on February 25, 2010. He says that the bump began to swell and was getting more painful on February 26, 2010, so he "began to notify all officers on shift that day." Plaintiff

---

[2] It is recommended that Defendants' motion for summary judgment be granted on the merits, as discussed below. Alternatively, it is recommended that this action be dismissed because Plaintiff failed to exhaust his administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff admits he did not file any grievance concerning the incidents in question. In his Complaint, he asserted that no grievance system existed at BCDC. Complaint at 2. Defendants, however, have provided a copy of BCDC's grievance policy. See Tony Riley Aff. (Defendants' Ex. A), Ex. 2.

In his opposition memorandum, Plaintiff appears to argue that failure to exhaust should be excused because he was not made aware of any grievance policy, the policy was not explained to him, and the policy was not made available to him. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Thus, in some instances a plaintiff may produce evidence sufficient to raise an issue as to whether prison officials took active steps to thwart his right to file grievances and that his administrative remedies were therefore not "available to him. See Hill v. Haynes, 380 F. App'x 268, 273-74 (4th Cir. 2010). There is no evidence that Defendants took any active steps to thwart Plaintiff's right to file grievances. Sergeant Kris Jacumin orients inmates to BCDC and explains the proper procedure for filing a grievance. He believes Plaintiff was informed as to how to utilize the BCDC grievance system on January 29, 2010. Jacumin Aff. (Ex. 1 to Defendants' Reply).

2

appears to allege that Defendants were deliberately indifferent to his serious medical conditions because he informed officers that he was having a medical emergency on February 26, 2010 (Friday), but he was not treated by medical personnel until March 1, 2010 (Monday). Complaint at 3. Plaintiff asserts that his "right eye now permanently stands open wider than the left, and [his] vision which was previously 20/16....has deteriorated greatly due to strain on the optic nerves from the swelling of the infection." Id.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[3] The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

---

[3] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that

> he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Plaintiff did not submit a sick call request until February 27, 2010. In that request, he merely stated that he "got bit" by something on his face between his eyes which had swollen, was painful, and was causing his eye to blur. See Defendants' Ex. B. There is simply nothing to show that Defendants should have known that he had a staph infection where Plaintiff admits that he first thought he had a pimple and then thought he had a bug bite. Additionally, Defendant Corporal Sennitt has presented evidence that she was not on duty on February 26, 27, or 28, 2010, and Lt. Riley has presented evidence that he was not on duty February 27 or 28, 2010 such that they could not have been responsible for any alleged delay on those dates. See Defendants' Ex. E (Berkeley County Payroll records). Officer Justice Jenkins of the BCDC states he has personal knowledge of the events, Plaintiff's symptoms did not meet the criteria set forth by the medical staff at BCDC for outside medical care from February 26 through March 1, 2010; Plaintiff was not suffering an acute illness or injury on the nights of February 26, 27, and/or 28, 2010; and Plaintiff was treated on March 1, and 2, 2010. Jenkins Aff. (Defendants' Ex. C).[4]

---

[4] Defendants have provided a copy of portions of the BCDC Policy and Procedure Manual which sets out the health care procedures. See Tony Riley Aff. (Defendants' Ex. A), Ex. 1.

Sue Brabham, a registered nurse at Berkeley County Detention Center ("BCDC"), states that once medical staff leaves on Friday afternoon, outside medical care is available for emergency situations. She further states that Plaintiff's symptoms, as asserted in his Complaint and found in his medical record, did not meet the criteria set forth by the Medical Staff at the BCDC for outside care for the period of February 26, 2010 through the morning of March 1, 2010. Nurse Brabham states that if she had received a call reciting Plaintiff's symptoms on the dates in question, she would not have recommended outside medical treatment and would not have visited the detention center to assess his condition. Additionally, Nurse Brabham states that the records indicate that Plaintiff's condition was handled appropriately and his treatment was rendered in accordance to the policies and procedures of BCDC. Brabham Aff. (Defendants' Ex. D).

To the extent that Plaintiff alleges a claim due to a delay in treatment, he fails to show that the delay resulted in some substantial harm or that it created a substantial risk of serious harm of which Defendants were aware. See, e.g., Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. 2008)(Eighth Amendment violation only occurs if the delay results in some substantial harm to the patient); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993)(same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990)(same). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004)("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware]."). Plaintiff claims that delay

caused him harm, but he has presented nothing to show this. Review of Plaintiff's BCDC medical records fails to reveal that he suffered any substantial harm from any delay in treatment.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

2.     Qualified Immunity

Defendants contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

7

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

    3.    <u>State Law Claim</u>

Plaintiff appears to allege a claim for negligence under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

### **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 34) be **granted**, and any state law claims be **dismissed** without prejudice.

    Joseph R. McCrorey
    United States Magistrate Judge

October 26, 2011
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

8

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).